## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

REGINALD MCNEARY,              )
                               )
            Movant,            )
                               )
      v.                       )        No. 4:14 CV 1860 CDP
                               )
UNITED STATES OF AMERICA,      )
                               )
            Respondent.        )

## MEMORANDUM AND ORDER

This matter is before me on Reginald McNeary's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Pursuant to a written plea agreement, McNeary pled guilty to ten counts of conspiracy, bank fraud, mail fraud, and receipt of stolen property in connection with a scheme to defraud owners of their proprietary interest in motor vehicles. I sentenced him to a total term of 72 months imprisonment, plus five years of supervised release. Criminal Case No. 4:13CR143 CDP. McNeary did not appeal. He then filed a § 2255 motion, alleging five grounds for relief.

I appointed the Federal Public Defender's Office to represent McNeary in an evidentiary held on September 3, 2015. McNeary appeared in person and with counsel Kevin Curran at the hearing, testified, and presented two exhibits in support of his claims. The government offered the testimony of McNeary's prior

defense counsel, Paul Sims, who also appeared in person and testified. Based on the evidence, the arguments of counsel, and the briefs filed on the § 2255 motion, I conclude that McNeary's motion is meritless and so I deny for the reasons that follow.

## Grounds for Relief

McNeary's *pro se* § 2255 motion raises the following five grounds for relief:

1) "Sentencing court abused its legal authority by failing to abide by the open plea of 30 months and sentence above guideline range without justification or cause. Judge Perry . . . went over the sentencing guideline range of 30 months which was verbally promised by counsel and the government in the plea agreement on December 12, 2013;"

2) Movant claims he signed the plea agreement on February 18, 2014, two days after he tried to commit suicide, and that counsel told him he was "legally agreeing to a term of 60 months on the ten count criminal federal indictment with the downward departure in which movant would receive a 30 month prison sentence;"

3) Ineffective assistance of trial counsel for: 1) failing to file a notice of appeal; 2) failing to challenge the indictment; 3) failing to object to the PSR; and 4) failing to "assist in his mental health state;" and

4) "Movant contends he was medically inducted under a medical psychicated mood altering anti-depressant drug at the time of sentencing which altered his judgment." Movant claims he asked counsel to postpone the sentencing hearing because he was on medication, but counsel did not request a continuance. He also alleges that the moved for a "mental psychiate evaluation before sentencing after suicide attempt was placed on a mind-altering drug (Risprodom) which affected movant's judgment;" and

5) "Movant is legally seeking and is eligible for the (2) two point drug guideline sentence level reduction for all non-violent level offenders. Movant legally falls under the 'safety valve' due to his offense. Movant is legally eligible and entitled to receive the two point level drug guideline sentence level reduction based on movant's crime is a non-violent offense."

<u>Background Facts</u>

In his signed plea agreement, McNeary agreed to a Guidelines application resulting in a total offense level of 23. He also agreed not to request a sentence below the Guidelines range. McNeary waived his right to appeal non-jurisdictional, non-sentencing issues, including any issues relating to pretrial motions, discovery, and his guilty plea, as well as all sentencing issues other than criminal history. McNeary also waived any right to file a § 2255 motion except for issues of prosecutorial misconduct or ineffective assistance of counsel.

I went over McNeary's plea agreement with him during the change of plea hearing on December 16, 2013. At that time, McNeary told me that he and the Assistant United States Attorney agreed upon a total offense level of 23. [4:13CR143 Doc. #955 at 15]. He also told me that he understood that he was giving up his right to appeal his sentence (as long as he was sentenced within the Guidelines range) and his right to file a post-conviction motion on any issue other than prosecutorial misconduct or ineffective assistance of counsel. [*Id*. at 15-16]. I also told him that "there's a possibility that . . . the Government might ask me to give you a lower sentence, but there's no promise or guarantee of that." [*Id*. at 17].

When I asked him if he understood that, he said, "Yes, your Honor." [*Id.*].

McNeary also confirmed that he understood that neither he nor the Assistant

United States Attorney could ask for a sentence outside the Guidelines range. [*Id.*

at 7]. Because McNeary admitted that he was guilty and knowingly and

voluntarily waived his rights, I accepted his guilty plea and set his sentencing for

March 19, 2014. [*Id.* at 19].

Between that time and his sentencing date, it was reported that McNeary had

attempted suicide while in jail. His attorney Paul Sims went to visit him in jail

after the so-called attempt.[1] During that visit, Sims discussed the possibility of

requesting a mental examination and the risks associated with such a request,

including the fact that McNeary could lose his acceptance of responsibility points

and possibly subject himself to an obstruction of justice charge if the examiner

believed that McNeary was malingering. McNeary then admitted that he had faked

the suicide attempt to get transferred to a different housing unit. For that reason,

McNeary decided that he did not want to request a mental examination. After

speaking to McNeary, Sims believed that McNeary was not a danger to himself or

others and was mentally stable.

At some point after this visit, McNeary had a "Motion for Mental and

---

[1] Some of the facts in this opinion come from the evidentiary hearing held on September 3, 2015. To the extent McNeary's testimony differs from Sims' testimony, I credit Sims' version of events over McNeary's.

Physical Examination" delivered to Sims.  This motion, which was never filed in the criminal case, was presented as movant's Exhibit 1 at the evidentiary hearing. McNeary testified that a "jailhouse lawyer" prepared this motion for him and that he wanted Sims to file it but that Sims refused.  This motion claims that McNeary "intends to rely on the defense of insanity" and requests a mental examination.  It also claims that McNeary has extreme emotional disturbance, mental retardation, and borderline schizophrenia.[2]  Sims testified that McNeary decided not to file this motion after he discussed the possible consequences of filing such a motion, including the loss of his acceptance of responsibility and a possible obstruction charge.

Prior to sentencing, Sims saw McNeary again in jail to review the Presentence Investigation Report, which calculated McNeary's Total Offense Level as 23 with a Criminal History Category VI and a Guidelines range of 92-115 months.  After reviewing the report, McNeary told Sims that he had no objections to the PSR, so Sims did not file any.  Sims then told McNeary of his upcoming sentencing hearing, and McNeary understood that his next court appearance would be for sentencing.

McNeary appeared for sentencing as scheduled on March 19, 2014.  Both

---

[2] When I asked McNeary at the evidentiary hearing whether he had actually ever been diagnosed as borderline schizophrenic, he evaded my question and stated instead that he had only read the motion "to an extent" before it was given to Sims.

Sims and John Ware, the Assistant United States Attorney, spoke to McNeary before the hearing began. McNeary seemed normal to both lawyers. Ware found him "alert, bright, [with] a good memory." Counsel came to my chambers before the hearing began to discuss McNeary's so-called suicide attempt. At that time, both lawyers assured me that McNeary was mentally stable. Sims also told me that he explained the risks associated with seeking a mental evaluation in this case and that McNeary was not requesting a mental evaluation. After discussions with counsel, I decided to proceed as scheduled with the sentencing hearing.

During the sentencing hearing, McNeary told me that he had gone over the PSR with Sims and that he had no objections. Sims then requested a sidebar conference to tell me about McNeary's cooperation with the government. Ware acknowledged that McNeary had cooperated but stated that his cooperation had not yet reached the level of substantial assistance such that the government would file a downward departure motion. However, Ware did recommend I sentence McNeary at the low end of the Guidelines range and stated that if McNeary's information ultimately rendered substantial assistance to the government, then he would file a Rule 35 motion[3] after sentencing. Sims then mentioned McNeary's past cooperation with law enforcement, and McNeary told me he provided

---

[3] Under Rule 35 of the Federal Rules of Criminal Procedure, upon motion of the government made within one year of sentencing the court may reduce a defendant's sentence for providing substantial assistance in investigating or prosecuting another person. Fed. R. Crim. P. 35(b)(1).

information that stopped a robbery and gave information to law enforcement officials in other districts regarding two homicides. He also told me that he worked with the DEA in drug cases. Ware confirmed that McNeary had assisted another Assistant United States Attorney in this district in an unrelated case, but that cooperation happened well before the indictment in the pending case. Sims then asked for a downward variance based on McNeary's "long history" of cooperation with law enforcement. McNeary told me he cooperated because he "just wanted to help."

I then spoke to McNeary about his previous testimony before me when he was a teenager in an unrelated civil case. McNeary recalled the case, his testimony before me, and the name of the poem that he read in court. When I told McNeary that I remembered his poem, he told me that he continues to write and that he "just shot *Saving St. Louis*, north St. Louis, with curbing the recidivism rate and disenfranchised teenagers committing crimes and doing stuff . . . ." [4:13CR143 Doc. # 956 at 5].

After considering all the information provided to me at sentencing, including McNeary's "history and circumstances, including [his] difficult upbringing and [his] serious substance abuse" as well as the nature of the crime, I granted Sims' request for a variance and sentenced McNeary to 72 months imprisonment, which was below the Guidelines range of 92 to 115 months. I then advised McNeary of

his appeal rights.  [4:13CR143 Doc. # 956 at 12].  Sims requested that McNeary be screened for the drug treatment program and a mental health facility, and I agreed and made those recommendations to the Bureau of Prisons.  Although McNeary testified at the evidentiary hearing that he asked Sims in the courtroom at the conclusion of his sentencing hearing to appeal, I credit Sims' testimony that McNeary never asked him to file an appeal on his behalf.

Discussion

At the evidentiary hearing in this matter, McNeary conceded during his testimony that he was not contesting the validity of his guilty plea.  Kevin Curran asked him whether he was "contesting [his] plea [because] I mean you pled guilty," and McNeary responded, "No, sir no, sir."  McNeary admitted to me (both at the evidentiary hearing and during his plea colloquy) that he was not on any psychotropic medication at the time he pled guilty.  Moreover, the record conclusively demonstrates that McNeary's so-called suicide attempt was *after* he pled guilty, not before as alleged in the § 2255 motion.  Therefore, to the extent Grounds 2 and 4 of the § 2255 motion challenge the validity of McNeary's guilty plea or allege that McNeary did not knowingly and voluntarily enter into the plea agreement and plead guilty, they are summarily denied as abandoned by movant and flatly contradicted by the record in this case.

In Ground 1, McNeary argues that I sentenced him above the Guidelines

range and the 30 month sentence in the plea agreement. Even if this claim could

properly be raised here, it is refuted by the facts in the case. McNeary's plea

agreement contains no agreed-upon sentence (30 months or otherwise); instead, it

only contains a stipulated Total Offense Level of 23. Of course, I was not obligated

to follow this agreement and told McNeary so during the plea colloquy. [Case No.

4:13CR143 at Doc. # 955 at 14]. Nevertheless, McNeary's Guidelines range was,

in fact, calculated in accordance with the plea agreement. The PSR calculated

McNeary's Total Offense Level as 23, but with McNeary's criminal history

category this resulted in a Guidelines range of 92-115 months, not 30 months as

McNeary mistakenly argues. And I actually sentenced McNeary 20 months *below*

the Guidelines range, not above it, when I gave him a sentence of 72 months. To

the extent Ground 1 alleges that Sims promised him a sentence of 30 months, that

claim will be addressed below with McNeary's other ineffective assistance of

counsel claims. In all other respects, Ground 1 is denied.

Ground 3 of McNeary's § 2255 motion alleges that Sims was ineffective for

failing to file a notice of appeal, challenge the indictment, object to the PSR, and

"assist in his mental health state." The Sixth Amendment establishes the right of

the criminally accused to the effective assistance of counsel. *Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984). A movant faces a "heavy burden" to

establish ineffective assistance of counsel in the context of a § 2255. *United States*

*v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). To state a claim for ineffective assistance of counsel, McNeary must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To decide this, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, McNeary "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, a movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). I need not address both components if McNeary makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

Initially all of McNeary's ineffective assistance claims, except the one related to the failure to appeal, must be denied because McNeary does not contend that he would have insisted on going to trial but for Sims' alleged errors. In fact,

McNeary told me in the evidentiary hearing that he does not contest the validity of guilty plea, which necessarily includes his intention to enter it. McNeary further underscored his desire to plead guilty when he acknowledged on cross-examination during the evidentiary hearing that the plea agreement was "a good deal" compared to going to trial. His claims fail for other reasons, too.

McNeary cannot show that Sims rendered ineffective assistance by failing to file a motion challenging the indictment because he knowingly waived his right to file pre-trial motions before United States Magistrate Judge Nannette A. Baker. Moreover, McNeary does not explain what arguments Sims should have raised in any pretrial motions. McNeary also fails to offer any evidence as to how this alleged error prejudiced him as he has admitted to me that he is not challenging any aspect of his valid guilty plea, which waived all challenges to non-jurisdictional defects and defenses, such as challenges to the sufficiency of the indictment. *See United States v. Frook*, 616 F.3d 773, 778 (8th Cir. 2010). This ineffective assistance claim fails, as does McNeary's claim that Sims failed to file objections to the PSR. Although less than clear, it appears McNeary is claiming that Sims should have objected to the restitution amounts. This claim fails as I credit Sims' testimony that McNeary had no objections to the PSR. This is entirely consistent with McNeary's statements to me during the sentencing hearing that he went over the PSR with Sims and had no objections to it. (Case 4:13CR143 CDP

Doc. # 956 at 2).  Moreover, McNeary fails to specify what objections Sims should have made to the restitution amounts, and he alleges no legal or factual errors in the awarded restitution.[4]  As counsel cannot be ineffective for failing to make a meritless argument, McNeary's ineffective assistance claims fail.  *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").  The same analysis applies to Sims' alleged failure to request a two-level "safety valve" departure, object to his role in the offense, or request application of Amendment 782 (the "Drugs Minus 2" Guideline amendment).  Because McNeary was not eligible for the "safety valve" departure or any reduction under Amendment 782 as a matter of law,[5] and he agreed in his guilty plea agreement to the enhancement for his role in the offense, Sims cannot be ineffective for failing to raise these meritless arguments.  *See Whitiker v. United States*, 2010 WL 908474, at *2 (E.D. Mo. Mar. 9, 2009) (attorney cannot be ineffective for failing to argue for application of safety valve in fraud and identity theft case because safety valve applies only to controlled substances offenses).

McNeary next argues that Sims was ineffective for "failing to assist in his

---

[4] To the extent McNeary seeks a "restitution reduction" in Ground 4, this request is summarily denied as "a federal prisoner cannot challenge the restitution portion of his sentence under 28 U.S.C. § 2255 because this statute affords relief only to prisoners claiming a right to be released from custody."  *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003).

[5] This is not a drug case, so Amendment 782 and the safety valve provision do not apply.  *See* 18 U.S.C. § 3553(f).  For this reason, Ground 5 of the instant motion is summarily denied.

mental health state."  This claim is related to Ground 4 of the § 2255 motion, which directly raises the issue of McNeary's mental health and competency at sentencing.  Although McNeary backed away from this position somewhat during the evidentiary hearing, in his motion he claims that he was not competent at sentencing because he was on psychotropic medication and his attorney was ineffective for failing to inform me of his so-called suicide attempt or seeking a mental health evaluation prior to proceeding with sentencing.  "[A] defendant must be competent at all stages of prosecution, including sentencing."  *United States v. Rickert*, 685 F.3d 760, 765 (8th Cir. 2012).  "A defendant is competent if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."  *Id.* (internal quotation marks and citation omitted).  A competency hearing is required when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist in his defense."  18 U.S.C. § 4241(a).

I find that McNeary was competent at sentencing and deny all grounds for relief based on this argument (Ground 4 and part of Ground 3).  As I did at the time, I continue to credit the observations of Sims and Ware (each of whom met

with McNeary numerous times during the pendency of his criminal case), who found McNeary to be mentally stable and alert prior to the sentencing hearing. Contrary to McNeary's assertions, Sims did inform me of his so-called suicide attempt prior to the sentencing hearing, but after discussions with counsel about the possible negative consequences to McNeary if a mental health evaluation was requested, I made the decision to go ahead with sentencing. Although Sims did not reveal such information to me at the time, I now know that McNeary faked his suicide attempt in an effort to get moved to a different housing unit in the jail. Therefore, any argument that his mental competence at the time of sentencing could be called into question by his so-called suicide attempt is flatly contradicted by the facts in this case.

My own observations of McNeary during the sentencing hearing were entirely consistent with those of counsel. McNeary responded to all questions I asked him, and during sidebar he explained, in detail and in his own words, the extent of his prior cooperation with law enforcement officials. I also had a conversation with McNeary about his prior appearance in my courtroom as a teenager in an unrelated civil case. McNeary recalled the case and the name of the poem he read aloud during that case without any lapses in memory. He also told me that he made a documentary film and continues to write creatively. When it suited McNeary, he was competent to provide me with information that might (and

ultimately did) persuade me to give him a lower sentence.  Now faced with the

reality that the government did not file a Rule 35 motion on his behalf, McNeary

has decided to claim that he was incompetent at sentencing in an attempt to get a

lower sentence.  This I will not allow him to do.  McNeary was competent during

his guilty plea, he was competent at sentencing, and he was competent when he

testified before me at the evidentiary hearing on this § 2255 motion.

Because McNeary was competent, Sims was not ineffective for failing to

request a mental health examination prior to sentencing.  Although McNeary now

complains that Sims refused to file the "Motion for Mental and Physical

Examination" submitted as Exhibit 1 at the evidentiary hearing, McNeary cannot

demonstrate that this amounted to deficient performance.  The motion contained

numerous factual misstatements and legal errors, and as previously explained to

McNeary by Sims, requesting a mental health examination based on a faked

suicide attempt would have exposed McNeary to numerous negative consequences,

such as the loss of his acceptance of responsibility and a possible obstruction

charge.  Sims was not ineffective for failing to file such a meritless and potentially

damaging motion, particularly since I credit his testimony that McNeary told him

not to make such a request.

McNeary also alleges that Sims was ineffective for failing to file a notice of

appeal after being requested to do so.  A lawyer's failure to file a requested appeal

automatically satisfies the deficient-performance prong of *Strickland*, and no showing of prejudice is required. *Witthar v. United States,* 793 F.3d 920, 922 (8th Cir. 2015). However, for such a claim to succeed, movant must demonstrate that he instructed counsel to file an appeal. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). Here, after holding the required evidentiary hearing, I credit Sims' testimony over McNeary's that McNeary never asked him to file an appeal on his behalf. McNeary's testimony was simply not credible. Instead, I believe Sims that McNeary was not upset about his sentence – which was significantly below the bottom of the Guidelines – and that he never asked him to appeal, either in the courtroom immediately after the sentencing hearing or at any other time. As was discussed during the sentencing hearing, at that time there was still the possibility that the government would file a Rule 35 motion if McNeary's cooperation rose to the level of substantial assistance.

During the evidentiary hearing, it became clear that McNeary's real complaint in this case was that he did not receive a downward departure motion from the government relating to his cooperation. Yet the plea agreement conclusively demonstrates that the government was not required to file a motion, either before sentencing or after, to reduce McNeary's sentence for his "substantial assistance." The decision whether or not to request such a reduction rests "entirely in the hands of the government." *Tinajero-Ortiz v. United States*, 635

F.3d 1100, 1105 (8th Cir. 2011). For this reason, McNeary cannot obtain § 2255 relief based on the government's refusal to file a substantial assistance motion absent an unconstitutional motive or bad faith, neither of which has even been alleged, much less proven, in this case. *See id.* McNeary was offered the opportunity by Ware to enter into a cooperation agreement related to this case but he refused, preferring instead to roll the dice regarding his potential indictment. Once he was indicted, McNeary tried to cooperate in an effort to reduce his sentencing by providing information about an unrelated potential drug deal, but that information ultimately did not pan out. McNeary did not receive a downward departure motion because the information he provided in hopes of getting one did not amount to "substantial assistance." Had McNeary entered into a cooperation agreement when it was offered to him, the result might have been very different. But McNeary chose not to do so and must live with the consequences of his decision.

Where, as here, the defendant did not request or instruct his trial attorney to appeal, "the court considering a claim of ineffective assistance of counsel must then determine whether counsel consulted with the defendant about an appeal and, if not, whether the failure to consult was unreasonable." *Parsons v. United States*, 505 F.3d 797, 798 (8th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). "Counsel has a constitutionally imposed duty to consult where there is a

reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Parsons*, 505 F.3d at 798 (quoting *Flores-Ortega*, 528 U.S. at 480) (internal alteration and quotation marks omitted).

Here, I have already found that McNeary never instructed or requested Sims file an appeal, nor did he reasonably demonstrate to Sims that he was interested in appealing. I also credit Sims' testimony that he discussed McNeary's waiver of appellate rights with him and that McNeary understood he was waiving his appellate rights "except for if . . . I didn't do my job correctly or if the U.S. Attorney's office did something underhanded." I also apprised McNeary of his appeal rights, including his agreement to waive appeal, at the plea and sentencing hearings, and McNeary told me he understood these rights and that he was waiving them. Given that Sims successfully argued for *and obtained* a variance of 20 months below the Guidelines (*despite* the plea agreement specifically prohibiting McNeary from seeking a below Guidelines-range sentence) and there was a possibility that the government would file a Rule 35 motion, McNeary cannot demonstrate that Sims would have any reason to think a rational defendant would want to appeal under those circumstances. To the contrary, Sims could easily conclude that a rational defendant would *not* want to appeal under those

circumstances, especially given the potential negative consequences to McNeary should he file a notice of appeal:

> [A] defendant generally has nothing to gain by filing an appeal on a waived ground. She does, however have something to lose. In many plea agreements, the Government makes concessions in exchange for a defendant's guilty plea and related waivers, such as dismissing counts or agreeing not to bring additional charges. A defendant's breach of the promise not to appeal or seek collateral review places the Government's concessions in jeopardy. The Government could seek to reinstate dismissed counts or bring additional charges related to the defendant's underlying acts. In addition, bringing a waived appeal or collateral attack could demonstrate to the court that the defendant has not accepted responsibility and thereby allow the court to rescind a sentencing-guidelines reduction under USSG § 3E1.1.

*Witthar*, 793 F.3d at 925 (internal citations omitted) (Gruender, J.) (concurring).

McNeary certainly faced all these risks had he appealed despite his valid waiver. Because McNeary cannot demonstrate that Sims was ineffective, Ground 3 of his § 2255 motion fails.

McNeary also argues that Sims promised him a sentence of 30 months. Again, I credit Sims' testimony that he never made such a promise to McNeary and reject any claim for relief based on this allegation. During the evidentiary hearing, McNeary also testified to numerous other instances of alleged attorney error, such as claiming Sims did not explain the Sentencing Guidelines, go over the PSR with him, or inform him that his sentencing hearing was actually a sentencing hearing. Even if I construed this testimony as raising additional claims of ineffective assistance of counsel, I would deny the claims and credit Sims' testimony, not

McNeary's, on these issues. Sims went over the Sentencing Guidelines and the PSR with McNeary, who clearly knew he was in court for sentencing on the day of the sentencing hearing. Although McNeary complains that Sims should have called law enforcement officials to testify on his behalf at the sentencing hearing, he admits that all the information related to his cooperation was presented to me during the sidebar conference. McNeary also argues that Sims should have presented information about his physical health during sentencing. However, I already had information related to McNeary's physical condition – including the fact that he had been shot twice – before me as it was included within the PSR. McNeary fails to explain what additional information Sims should have provided to me about his physical condition, or how this information would have impacted his sentence. In fashioning McNeary's sentence, I considered all relevant factors, including the information set out in the PSR and the evidence of his cooperation presented during the sentencing hearing. After taking into account all relevant factors, I varied 20 months below the bottom of the Guidelines range. Sims advocated ably on behalf of his client, and McNeary has not shown that Sims rendered ineffective assistance of counsel in any aspect of his case. For these reasons, Ground 3 of his § 2255 motion fails.

## Conclusion

As McNeary has not made a substantial showing of the denial of a federal

constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Reginald McNeary to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as McNeary has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that the Federal Public Defender's Office for this District and Kevin Curran's appointed representation of Reginald McNeary is concluded, and the Federal Public Defender's Office for this District and Kevin Curran have no further obligations in this matter.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of October, 2015.